## BOWLES *v.* UNITED STATES.

No. 589.  Argued April 14, 1943.—Decided May 3, 1943.

*Mr. Osmond K. Fraenkel* for petitioner.

*Assistant Attorney General Berge,* with whom *Solicitor General Fahy* and *Mr. Richard S. Salant* were on the brief, for the United States.

PER CURIAM.

Petitioner has been convicted in the district court of violating § 11 of the Selective Training and Service Act of 1940, 54 Stat. 885, in that he failed to respond to an order of his draft board to report for induction into the Army.  On the trial, he set up as a defense that he was

entitled to exemption from the draft as a conscientious objector under the provisions of § 5 (g) of the Act; that he had claimed his exemption before the local draft board which rejected it; that, on his appeal to the appropriate appeal board, the Department of Justice, acting pursuant to § 5 (g), had submitted to the board its advisory recommendation that petitioner's objection to military service be sustained, but that the appeal board, by reason of an erroneous interpretation of the statute, had rejected petitioner's claim of exemption.

In the course of the trial, petitioner sought leave to inspect his entire Selective Service file, as he apparently is authorized to do by § 605.32 of the Selective Service Regulations. On objection of the Government, leave was denied by the district court. Petitioner has not presented this question for review by his petition for certiorari. The court also excluded evidence proffered by petitioner to show that the appeal board had rejected his appeal on the ground that, as he was not a member of a recognized religious organization opposed to participation in war, he was not entitled to exemption by the statute, which grants the exemption only to a person "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form." In particular the trial court excluded a letter to petitioner by the chairman of the appeal board which expressed the opinion that the statutory exemption applies only to members of a "religious sect or cult that has as one of its canons a resistance to participation in activity of armed forces or participation in war."

On appeal the circuit court of appeals affirmed, 131 F. 2d 818. It thought that if the appeal board rejected the claim of exemption for the reasons asserted by petitioner, the board erroneously interpreted the statute. But the court held that such an error could not be set up as a defense to the indictment charging petitioner's failure to

comply with the order to report for induction. The court suggested that petitioner's appropriate remedy was by petition for habeas corpus after the administrative appeal procedure provided by the Act had been concluded, and after he had submitted to induction. We granted certiorari, 318 U. S. 749, because of the public importance of the questions of law decided by the circuit court of appeals.

But it now appears from the proceedings in this Court that the judgment should be affirmed without decision of those questions. On the argument before us the Government, which in the district court had denied petitioner access to his Selective Service file, produced from the file, and tendered for our consideration (1) a copy of petitioner's appeal to the President from the action taken by the appeal board, (2) a copy of the decision on that appeal rendered by the Director of Selective Service, by authority of the President and pursuant to § 628.1 of the Selective Service Regulations, and (3) a copy of the letter of the draft board notifying petitioner that upon his appeal to the President his classification had been affirmed and that he would therefore be ordered to report for induction.

The decision of the Director, of which we take judicial notice, *Caha* v. *United States,* 152 U. S. 211, 221–22; *Thornton* v. *United States,* 271 U. S. 414, 420; *The Paquete Habana,* 175 U. S. 677, 696, antedated the order of the draft board directing petitioner to report for induction. The claim to exemption was rejected by the Director on the ground that in fact petitioner was not conscientiously opposed to military service, and that he was therefore not entitled to the benefit of the exemption prescribed by the Act. Before the local draft board issued its order to petitioner, the appeal board's determination which he assails here, had been superseded by the action taken by the Director on the final appeal to the President. Hence the order rests on the Director's controlling

determination of fact, adverse to petitioner's claim of conscientious objection to military service, and not on the alleged erroneous interpretation of the Act which petitioner urges as a defense in the present criminal proceeding.

It thus appears that that defense to the criminal charge could never have been available to petitioner in this proceeding; that at most it was harmless error, which petitioner has not sought to review here, to deny him access to his Selective Service file; and that the judgment must be affirmed without consideration of the points of law on which the court below rendered its decision and which were urged as grounds for certiorari.

*Affirmed.*

MR. JUSTICE JACKSON, dissenting:

Bowles was indicted for failing to respond to an order for induction into the Army. He sought to show that the order of induction was invalid because his classification had been made under a wrong interpretation of the law. He had a letter from the Board of Appeal, a part of which showed that at one time and in one aspect the Board clearly misapprehended the law applicable to his case. He sought to inspect his Selective Service file, as he had a right to do. This file would show when and how, if ever, his case was considered under a proper understanding of the law. The prosecutor refused to produce the file and kept it out of evidence. Bowles was convicted.

Bowles asks us to review the trial court's ruling that even if he was wrongly classified through mistake of law it is no defense to the indictment. The Government succeeds in persuading us to refuse to entertain this question, by printing in its brief a copy of a decision by General Hershey, acting for the President, denying petitioner's appeal. No question has been raised as to the authenticity of this copy, and I raise none. But the facts remain

that, for some reason, the prosecution denied Bowles the right to inspect his Selective Service file and kept it out of evidence. What the file may reveal I do not know. I strongly suspect he will be no better off for seeing it. Yet the prosecuting attorneys presumably knew what was in the file and they withheld it from him. My experience indicates that it would be more reasonable to assume that they illegally suppressed the file to help their case than to assume such behavior was purposeless. I see no reason why the strong inferences that usually arise from suppression, destruction, or failure to produce evidence in control of a litigating party should not apply here. I am confident that counsel handling this case in this Court not only would not suppress, but would disclose to us, any relevant part of this file, whether it helped or hurt their case. But confidence in counsel founded on personal knowledge is not a safe basis for establishing a practice.

Bowles was forced to try his case in the dark, being refused information to which he was entitled. It is true that he did not assign this as grounds for certiorari. But it is not Bowles who is here trying to use the information contained in the file. The citizen, of necessity, has few rights when he faces the war machine. One of them is the right to know what happened to him and why, as shown by his Selective Service file, even if he is not able to do anything about it.

The ultimate question raised by Bowles is whether one indicted for failing to submit to an induction order may defend by showing that the order is invalid. The Court considers the parts of the file now tendered by the Government and accepts the Government's suggestion that "the record does not properly present the question whether petitioner was entitled to contest the validity of his order to report for induction." The Court does not consider whether one may be convicted for disobeying an invalid

order; and I do not care to express a final opinion on the subject, since the disposition of the matter by the Court precludes its determination of the question. But I would not readily assume that, whatever may be the other consequences of refusal to report for induction, courts must convict and punish one for disobedience of an unlawful order by whomsoever made.

If we are to consider the decision of the case by General Hershey and assume that the file contains nothing else helpful to the defendant, I agree with the Court's conclusion that Bowles is defenseless. But where the prosecution has illegally closed to the defendant files to which he was entitled, I do not think we should allow it to supplement the record here for the purpose of precluding decision of questions which, even if doubtful, Bowles seems entitled to raise if he can establish that the order of induction was illegal. To let the Government foreclose the question by producing records here which if ever relevant should have been examined in the court below seems to let the prosecution eat its cake and have it too.

MR. JUSTICE REED joins in this opinion.