## UNITED STATES ex rel. BODENSTEIN v. NICHOLS.

### No. 8840.

Circuit Court of Appeals, Third Circuit.
Argued July 24, 1945.

Decided Sept. 18, 1845.

156

Julien Cornell, of New York City (Samuel Thierman, of New York City, on the brief), for appellant.

George Mashank, Asst. U. S. Atty., of Sharon, Pa., and Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., for appellee.

Before BIGGS, WALLER, and McLAUGHLIN, Circuit Judges.

WALLER, Circuit Judge.

Appellant, asserting that he is concientiously opposed to war or to rendering any noncombatant service that would release another for the military defense of his country, was classified by his Local Board in IV–E. He was married in 1937, but no child was born of that marriage until the breath of the Draft Board was blowing hot on the back of his neck. A daughter was born to the couple on January 14, 1943, after which he sought a reclassification, or an additional classification, in III–D, meanwhile refusing to waive his classification in IV–E as a conscientious objector. [App. 48.] Before reporting to a civilian work camp near Kane, Pennsylvania, he advised his Local Board of the birth of his daughter and asserted that a case of extreme hardship to his allegedly dependent wife and child, as contemplated by Selective Service Regulation 622.32, would result if he were taken. He appeared before the Board in support of this contention and asserted further: (a) That he was the sole support of his family; (b) that the combined assets of himself and wife were about $200 in cash, $300 in a secondhand car, and $50 in stock, and that he owned no real estate or bonds; (c) that his wife's mother was a seventy-year-old deaf mute and could not take care of the baby; (d) that the wife's father was dead; (e) that his wife's sister was employed; (f) that his parents lived in another state. Before the process of bearing a child became too advanced his wife had been a stenographer for Lawyers Co-Operative Publishing Company in Rochester, New York, where appellant resided.

The record before us seems incomplete, but it definitely reveals that the Board gave him one or more hearings, received and understood his contentions, and declined to reclassify him in Class III–D. The Appeal Board refused to disturb his classification, and a request to the Director of Selective Service for an appeal to the President was determined by the Director to be unwarranted.

After reporting to the Civilian Public Service Camp at Kane, Pennsylvania, appellant brought habeas corpus proceedings against the Director of that camp, seeking a release and a reclassification in Class III–D. This appeal results from an adverse order of the Court below, wherein it stated: "It is our opinion that relator was legally classified as a conscientious objector, Class 4–E. He testified in court that he was a conscientious objector. We do not see how he can be lawfully classified in 3–D."

If the lower Court meant to hold that a III–D dependency classification was not available to a conscientious objector it was in error. See "Selective Service as the Tide of War Turns," page 178,[1] where the following is found: The objector, like all other registrants, may be entitled to deferment on the grounds of occupation or dependency, and until or unless such deferment is canceled, the issue would not be raised. The objector receives the same treatment as all other registrants."

■ We take that to mean that a conscientious objector, who is eligible to a Class III–D deferment, would first receive such a classification and that the issue of his conscientious objections would not be raised until and unless the III–D classification was canceled.

■■ But our holding that a conscientious objector may be put in Class III–D does not dispose of this case, for even if the lower Court were wrong in the reason assigned, the judgment, nevertheless, should be affirmed, because the record wholly fails to show that the Local Board acted arbitrarily, or capriciously, or in excess of its jurisdiction and power, and the burden of showing this was affirmatively on the appellant.

He not only failed to carry this burden but his own statements show that he was accorded full consideration by the Board. On March 4 he wrote it, stating: "Thank you for your courtesy and patience in my interview last night. I was much impressed by the manner in which you carried out the duties of what is obviously a difficult and often thankless task."

In his appeal from the order of the Local Board refusing to reclassify him, he wrote: "In making this appeal, no reflection on the ability or integrity of the local Draft Board is intended, but no group of men, particular-ly when dealing with human equations, are free from error and I believe an error has been made in this case."

In his letter of June 30, 1943, he wrote the Local Board: "I deeply appreciate the fact that my religious convictions regarding violence and war have been recognized."

The November 3, 1943, minutes of the Local Board show the following:

"1328-Shirley Bodenstein appeared before the board on Nov 3rd. He still thinks he should be classed as a 3D—his wife would have to accept relief from some church agency. *Feels the board has given him every consideration* on the 4E angle but still thinks their decision on not giving him a 3D incorrect.

"His visit before the board did not warrant any change in their previous decision." (Emphasis added.)

■ But the making of an *error* in judgment by the Local Board falls far short of caprice or any of the other devitalizing factors.

Sec. 310(a) (2), 50 U.S.C.A.Appendix, provides: "Such local boards, under rules and regulations prescribed by the President, shall have power within their respective jurisdictions to hear and determine, subject to the right of appeal to the appeal boards herein authorized all questions or claims with respect to inclusion for, or exemption or deferment from training and service under this Act of all individuals within the jurisdiction of such local boards. The decisions of such local boards *shall be final* except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. Appeal boards within the Selective Service System shall be composed of civilians who are citizens of the United States. The decision of such appeal boards *shall be final* in cases before them on appeal unless modified or changed by the President * * *." (Emphasis added.)

■ In view of the finality with which Congress has vested the Local Boards and Boards of Appeal with respect to inclusion for, exemption or deferment from, training and service under the Act, a court cannot substitute its judgment and discretion for that of Local or Appeal Boards, nor can it upset a classification by either of such Boards except in instances of fraud, caprice, lack of power, or lack of due process, and

---

[1] The 3rd Report of the Director of Selective Service.

then only if such invalidity is clearly made to appear.

In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 349, 88 L.Ed. 305, the Court, in considering whether or not Congress had authorized judicial review of the propriety of a Local Board's classification in a criminal prosecution for willful violation of an order directing a registrant to report, said: "We think it has not. The Act nowhere explicitly provides for such review and we have found nothing in its legislative history which indicates an intention to afford it. * * * Surely if Congress had intended to authorize interference with that process by intermediate challenges of orders to report, it would have said so."

The reasoning in the Falbo case seems equally applicable to any case where one liable to military duty seeks to have the Court substitute its opinion for that of the Board when there is no positive showing of such fraud, arbitrariness, caprice, lack of power, or lack of due process of law, as would render the action of the Board a nullity.[2] Appellant neither asserted nor proved that the Board was dishonest or prejudiced, or that it refused to give him a hearing or to consider the information which he submitted.

The statute under which deferment for dependency is authorized, sec. 305(e) (1), 50 U.S.C.A.Appendix, is not mandatory, nor is Sec. 622.32 of the regulations providing for a III–D classification in the case of extreme hardship to dependents. Not only must the induction result in *extreme* hardship and privation, but the Board need not defer a registrant even then unless it considers it "advisable that he be deferred".[3] Such a deferment rests within the sound discretion of the Board, which discretion cannot be controlled by the courts.

The record in the present case shows a stipulation as to the testimony that was produced before the lower Court, but it fails to show how much, or what, evidence or information the Local Board had. A registrant is deferred or inducted by his friends and neighbors on the Local Board, and that Board may act on matters within its knowledge, whether in evidence or not. It is faced with the duty of furnishing men for the defense of the nation from those whom Congress has declared are subject to military duty. Manifestly the Board cannot suspend this process and have a formal trial under the established rules of evidence, with the testimony taken and transcribed, and the record made up, for every recalcitrant registrant who asserts an unwillingness to peform the duty which Congress has declared exists upon all men within certain ages, unless otherwise excepted by the Act.[4]

It is also a widely recognized rule that where one claims to be within an exception or exemption of an Act, the burden is on him clearly to show that he comes within such exception or exemption.[5] Appellant has not discharged the burden that was his in this particular. Since the Local Board could act on independent knowledge, its members are not restricted to a consideration only of the evidence submitted by the registrant at a formal hearing. The law presumes that the Board has done its duty. Congress evidently recognized the inadequacy of the courts to review factual decisions made by a Local Board based in whole or in part on facts in reference to a registrant that are known by the Local Board, but for obvious reasons are not required to be made matters of record.

Moreover, the appellant directed his attack against the action of the Local Board and not against the Appeal Board. In Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 913, 87 L.Ed. 1194, it was said: "Before the local draft board issued its order to petitioner, the appeal board's deter-

---

[2] Ex parte Stanziale, 3 Cir., 138 F.2d 312; United States v. Grieme, 3 Cir., 128 F.2d 811; Lehr v. United States, 5 Cir., 139 F.2d 919; Harris v. Ross, 5 Cir., 146 F.2d 355.

[3] The Selective Service regulations provide:

"622.32. *Class III-D: Man deferred by reason of extreme hardship and privation to wife, child, or parents.* (a) In Class III-D shall be placed any registrant not otherwise deferred if (1) it is determined that his induction into the land or naval forces would result in *extreme* hardship and privation to a wife, child, or parent with whom he maintains a bona fide family relationship in their home regardless of the date on which such bona fide family relationship in their home was established, and (2) by reason of such determination it is considered advisable that he be deferred."

[4] Harris v. Ross, supra.

[5] The Edith, 94 U.S. 518, 24 L.Ed. 167; Ross v. Duval, 38 U.S. 45, 10 L.Ed. 51; 20 Amer.Jur. 148, § 142.

mination, which he assails here, had been superseded by the action taken by the Director on the final appeal to the President. Hence the order [of induction] rests on the Director's controlling determination of fact, adverse to petitioner's claim of conscientious objection to military service, and not on the alleged erroneous interpretation of the Act   *   *   *."

In Cramer v. France, 9 Cir., 148 F.2d 801, 805, the Court said: "Moreover, we think the trial court is right in its assumption that appellant, having taken an appeal from the local board to the appeal board and secured a ruling of the latter as to his classification, cannot now complain to the court concerning the conduct of the local board. The action of the board of appeals completely supersedes the action of the local board in classifying appellant, although the classification is the same."

In the present case the ultimate classification was by the Appeal Board whose decision is final under the statute, and the reasoning and rule in the Bowles and Cramer cases, supra, would be applicable here—that is to say, the decision of the Local Board has been superseded by that of the Appeal Board which the petitioner did not question.

The judgment of the lower Court is affirmed.