UNITED STATES ex rel. YAROSLAWITZ
v. FALES, Commanding General, et al.

No. 858 J.

District Court, S. D. Florida,
Jacksonville Division.

July 23, 1945.

Solomon Badesch, of New York City, and Laura H. Hyde, of Jacksonville, Fla., for relator.

Damon G. Yerkes, Asst. U. S. Atty., of Jacksonville, Fla., and Major Reid B. Barnes, Fourth Service Command, of Atlanta, Ga., for respondents.

STRUM, District Judge.

Claiming to be a theological student preparing for the Jewish rabbinate, relator unsuccessfully sought a class IV—D exemption from military service. 50 U.S.C.A. Appendix, § 305(d). He was classified 1—A, inducted into the Army on February 23, 1945, and now seeks release by habeas corpus, asserting that the Local and Appeal Boards acted arbitrarily and capriciously in so classifying him.

The registrant, relator here, was first classified 1—A and ordered to report for pre-induction physical examination on March 9, 1944. This order was later cancelled, and relator directed to again report to the Board on March 20, 1944. On March 14, 1944, the Local Board transmitted relator's file to the Director of Selective Service for New York City, with the request that the case be considered by the Advisory Panel on theological classifications. The file was returned to the Local

962

Board for further consideration as to whether relator was physically acceptable for military service. It being found that he was, the file was returned to the Director for consideration by the Theological Panel. This Panel was composed of seven prominent Jewish rabbis and Hebrew laymen, one of whom was chairman of the Board of Directors, and another a member of the faculty, of the Seminary registrant was attending. This faculty member was personally known to registrant. Of the remaining five members of the Panel, two were Rabbis, two were Justices of the Supreme Court of New York, and one a Justice of the City Court of New York. All of them occupied prominent places in Jewish education and activities.

On June 28, 1944, this Panel heard relator at length, and on the same day made its report containing in part, the following findings: "Registrant is a student at one of the several Talmudic Academies in this area * * *. While these courses embrace the subject matter upon which candidates for traditional rabbinic certification are examined, students taking such courses are not necessarily preparing for the ministry. * * * Upon all the information presented and our examination of registrant, this Panel is of the opinion that registrant is not a serious student preparing for an active career in the rabbinate, and that his current religious studies at this time are prompted by extraneous considerations." The Seminary itself, by letter dated October 18, 1944, concurred in the finding of the Theological Panel, stating that "* * * in this particular case the Yeshiva (College) abides by the finding of the Panel on theological students. (Signed) Samuel L. Sar, Dean of Men."

On July 11, 1944, the above report of the Theological Panel was transmitted by New York City Headquarters of Selective Service to Local Board No. 204, with a letter stating that while the Local Board should give careful consideration to the recommendation of the Advisory Panel, "the responsibility of determining the registrant's classification must rest with the Board itself." After consideration, the Board adhered to its A—1 classification, and ordered registrant to report for induction, from which action registrant appealed. The Appeal Board unanimously sustained the 1—A classification.

On November 13, 1944, the Seminary addressed a letter to registrant, signed by its Dean of Men, advising registrant that he had been discharged as a student, and his name removed from the Seminary's record. A similar letter, dated December 1, 1944, was addressed to New York City Selective Service Headquarters, and transmitted by it to the Local Board, stating that "we do not consider him (Yaroslawitz) a student on our registry any more. (Signed) Samuel L. Sar, Dean of Men."

Relator was given a further hearing by the Board on January 16, 1945, at which he personally appeared, following which he was again classified 1—A. Again he appealed, and on February 7, 1945, the Appeal Board again sustained the classification by a vote of 4 to 0. Registrant was then inducted on February 23, 1945.

Just before his induction, registrant asserted that he was still paying tuition at the Theological Seminary, and was in good standing there as a student. This was investigated by the Local Board, which found that tuition was payable only in the Yeshiva (College), the secular branch of the institution, and that no tuition was charged or payable in the theological department. The Dean of the Seminary also advised New York City Headquarters, as of February 21, 1945, that the position taken in the letter of October 18, 1944, acquiescing in the Panel's findings as to this registrant, and the letter of December 1, 1944, advising that registrant had been discharged as a student, remained unchanged. This information was communicated to the Local Board, which, on February 20, 1945, also had before it the letter from the Seminary, dated October 18, 1944, concurring in the Panel's findings as to this registrant. However, under date of January 11, 1945, a letter was written by the President of the Seminary, "To Whom it may concern," stating that if registrant received a IV—D classification, he would be reinstated in the Yeshiva (College). On February 20, 1945, the Registrar of the Seminary also informed registrant that his status as a student had been "reconsidered," and his name reentered as a student. All of the above matters, and many more, were before the Local and Appeal Boards for consideration, as this case wound its tortuous way through the Administrative agencies for nearly a year.

By the Selective Service Act, approved September 16, 1940, 50 U.S.C.A. Appendix § 301 et seq., Congress declared it the duty of "every" male person between the ages of

18 and 65, residing in the United States, to present himself for, and submit to, registration for military duty. Ministers of religion and students preparing for the ministry in recognized schools were exempted from training and service, but not from registration. By the same Act, Congress confided to the Administrative authority, therein created, the power and responsibility of classifying registrants under the Act. Such Administrative classification is "final." 50 U.S.C.A. Appendix, § 310.

■■■■ Where, however, a Board acts in excess of its powers, or its proceedings have been so manifestly unfair as to preclude a fair investigation, or there has been an abuse of discretion manifested by arbitrary and capricious action amounting to a denial of due process, the Courts will intervene to correct such abuse. But Courts are not authorized to pass upon the propriety of such classifications, nor to review the Board's action for mere error, nor to determine whether or not upon the same evidence the Courts would have reached the same conclusion. Where the Board has acted within its power, and has accorded the registrant a fair opportunity to be heard, after reasonable notice, and there is evidence to support the Board's findings, the Courts will not interfere.

■■■■ The Boards do not have the power to induct, against his will, a student preparing for the ministry in a recognized theological school, in the face of the express exemption by Congress of such student. But the Boards do have the power and responsibility of determining whether or not the petitioner is, in fact, such a student. In discharging this function, the Boards are not required to follow the formal requisites of a Court trial. They may not only hear witnesses, they may act on other matters within their knowledge, whether in evidence or not.

The burden of proof is not upon the Board to show that the registrant is liable to service. It is upon the registrant to establish that he is entitled to the exemption he seeks. Harris v. Ross, 5 Cir., 146 F.2d 355, a case identical with this except that it involves a minister rather than a student.

■■■ In United States ex rel. Trainin v. Cain, 144 F.2d 944, the Court of Appeals of the Second Circuit approved the use of an Advisory Theological Panel such as was employed here. It affirmed an order of the District Court dismissing a writ of habeas corpus applied for upon grounds identical with those here presented. In the subsequent case of United States ex rel. Levy v. Cain, 2 Cir., 149 F.2d 338, certain limitations were placed upon the use of such a Panel, and the registrant there ordered discharged because the Local Draft Board acted exclusively upon the findings of this Panel, thus substituting the Panel for the Board. In the present case, however, it is convincingly plain that the Local and Appeal Boards exercised informed and independent judgment, based not only upon the recommendation of the Panel, but upon many other evidentiary facts as well. Thus the fault with the use of the Advisory Panel, pointed out in United States ex rel. Levy v. Cain, is entirely lacking here. The other limitations imposed upon the use of the Panel in the Levy case are also satisfied here.

An examination of the record and evidence in this case convinces the Court that the Administrative Boards, after reasonable notice, heard this registrant's claim patiently and thoroughly, rejecting the same after due consideration of the many facts before them. While the Local and Appeal Boards may have been influenced by the recommendation of the Theological Panel, they did not act upon that recommendation alone. There is much evidence, aside from the recommendation of the Theological Panel, to support their findings.

■■■■ Whether or not these Boards reached a just and correct conclusion on all the evidence is not for the Courts to decide. The power and responsibility of weighing and evaluating the evidence bearing upon classification, and of reconciling conflicts therein, is reposed in the Selective Service Boards, not the Courts. A finding by the Court in this case that the Selective Service Boards acted arbitrarily and capriciously would be unwarranted by the record and evidence before this Court. The Board may have acted erroneously, but it did not act arbitrarily or capriciously, nor did it act beyond the scope of its power. To order this petitioner released from military service would require this Court to condemn the Board's order for mere error of judgment. This the Courts are not authorized to do. Harris v. Ross, 5 Cir., 146 F.2d 355; Lehr v. United States, 5 Cir., 139 F.2d 919; United States ex rel. Steinberg v. Graham, D.C., 57 F.Supp. 938; Cramer v. France, 9 Cir., 1945, 148 F.2d 801; Ex Parte Stanziale, 3 Cir., 138 F.2d

312. Cf. United States ex rel. Rubin v. Magruder, D.C., 55 F.Supp. 947, a case much stronger for the petitioner on the facts than the present case.

Writ of habeas corpus quashed.