**DAVIS v. UNITED STATES.**

No. 14540.

United States Court of Appeals
Eighth Circuit.

April 15, 1953.

Writ of Certiorari Denied June 15, 1953.

See 73 S.Ct. 1138.

Hayden C. Covington, Brooklyn, N. Y. (Luther W. Adamson, Kansas City, Mo., on the brief), for appellant.

Harry F. Murphy, Asst. U. S. Atty., Kansas City, Mo. (Sam M. Wear, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellant pled not guilty and was tried and convicted upon an indictment which charged him with evading and/or refusing service in the armed forces in violation of Section 462, Title 50 U.S.C.A. Appendix. He was sentenced on the jury's verdict of guilty to three years imprisonment and he appeals.

Evidence was introduced on the trial of the case that appellant is a male citizen of the United States, born May 6, 1928, and was registered with his local draft board in Kansas in 1948. On October 12, 1948, the board classified him 1-A, but upon his showing to the board that he was a farmer employed as such, the board gave him deferred classification II-C on November 29, 1948, for the period of one year. Shortly thereafter he quit farming and went to work at a forty hour a week job for Atlas Wire Products Company in Kansas City, Missouri. His local board accordingly, after the expiration of the deferment, reclassified him 1-A on February 20, 1950. Thereafter he notified his board that he was claiming deferred classification other than 1-A as a minister of religion and also as a conscientious objector and submitted a written showing in support of the claims. He requested opportunity for personal appearance before the board and the board fixed May 23, 1950 for such appearance.

He duly appeared before the local board on that day in company with his brother who had previously been convicted and served time in prison for draft evasion.

Following the proceedings which were had on the personal appearance the board continued defendant's 1-A classification.

He thereupon appealed to the board of appeals by a letter dated June 1, 1950, addressed to the local board which was duly transmitted along with the file of the case to the board of appeals. In this appeal letter defendant reiterated his "conscientious objector" and "minister of religion" claims, but he did not make any claim to the appeal board that he had been denied any of his procedural rights to hearing or otherwise in the draft proceedings prior to the appeal. As to the proceedings on the occasion of his appearance before the local board on May 23, 1950, he alleged in the appeal letter merely that "at the hearing held May 23, 1950, I briefly stated my reasons for coming before them [the local board]."

When the appeal became lodged with the board of appeals it reviewed the file and made preliminary determination that the registrant was not entitled to be classified as a minister or as a conscientious objector. That board noted, however, that a conscientious objector claim was made by the registrant, and it caused that claim to be referred to the Department of Justice for inquiry, hearing and recommendation in compliance with Title 50 U.S.C.A.Appendix § 456(j). The District Attorney in Kansas accordingly received the file and referred the matter within the Department to the Federal Bureau of Investigation and one of the agents of that bureau, a Mr. William H. Norton, called on the registrant at the place where he was working and in the privacy of an automobile parked outside of the factory the two persons talked for some three-quarters of an hour to an hour. The appellant there signed and delivered to the agent a statement as follows:

"Kansas City, Mo.
September 20, 1950

"I, Kenneth Powell Davis, make the following free and voluntary statement to William H. Norton, known to me to be a Special Agent of the Federal Bureau of Investigation.

"I was born May 6, 1928, at Norton, Kansas. I now live at 3228 Wayne St., Kansas City, Missouri, and am employed at Atlas Wire Products Co., Kansas City, Mo. My Selective Service number is 14 52 28 19 Local Board No. 52, Norton, Kansas.

"I hereby state I am not a conscientious objector and withdraw my claim as such. In appealing from the classification of the Local Draft Board at Norton, Kansas I requested classification in IV-D as a minister and I rely solely on that claim and do not wish to be classified in classification IV-E or I-A-O. I understand that by signing this statement no further consideration will be given my conscientious objector claim.

"I have read this statement and it is true and correct.

"(s) Kenneth Powell Davis
"Witness:
"(s) William H. Norton, Special Agent, FBI,
"Kansas City, Mo."

The statement was in due course transmitted by the District Attorney in Kansas to the appeal board, accompanied by letter of the District Attorney to the effect that the report of the Bureau of Investigation disclosed that appellant had withdrawn his conscientious objector claim and that the subject's file was returned. The appeal board then continued registrant in 1-A classification. Thereafter he was ordered by his local board to report for induction. He obeyed the order to report, but having been examined and found fit he refused to be inducted. He stated at that time that he was a conscientious objector and a member of Jehovah's Witnesses. He refused to consider noncombatant duty in the army. The penalties for refusing induction were explained to him and he again refused.

The trial court permitted the defendant wide latitude on the trial of the case in testifying in his own behalf and in introducing testimony of his witnesses, but complying strictly with the declarations of the Supreme Court in the cases of Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331, the court held that on the

trial under the indictment "it was for the court to determine the legal question whether or not there has been due process" of law in the classification of the defendant for military service. It determined as a matter of law that the classification 1-A was made by the duly empowered board upon "substantial evidence upon which the board could make its classification; that due process was observed; that the administrative processes were carried out."

The court's instructions to the jury accordingly included the following:

"Defendant was properly qualified under the law and whether it was the right qualification was not for [the jury] to determine; the board classified him as they had the right to do, and they did. It then became the duty of this defendant, when so directed, to present himself for induction into the United States Army. So the sole question for you to determine is whether or not this defendant knowingly failed to do so. If he did he violated the law * * *".

Counsel conducting the appeal here are experienced and skilled in the field of litigation where this case arises and in their brief in this court they are at pains to avoid extraneous appeal and to confine their argument and the points on which they rely for reversal strictly to law questions which they think require decision in appellant's favor. They concentrate mainly on their contention that the trial court erred in refusing to give a peremptory instruction for acquittal on the request and motion of defendant made at the close of all the evidence.

They frankly concede that in view of Cox v. United States, supra, the trial court properly recognized that on the trial of this case it was the function of the trial court to pass on the law questions involved in the issue whether or not the defendant was lawfully classified 1-A under the Selective Service Act.[1] Their position is that the "law questions" were the only questions involved in the case, but they argue shortly "that if this court should find that there were fact questions for the jury they should be submitted to the jury on a new trial in accord with instructions that were duly requested and refused on the former trial."

It is noted that there is no contention in the briefs that the appellant's showing before his local board or the board of appeals upon his claim to be an "ordained minister of religion" or a "regular minister of religion" within the meaning of the Selective Service Act was of such conclusive character as to entitle him to such classification as a matter of law. Soon after he was first registered he appeared before his local board and showed that he was a farmer working as such, and he obtained a year's deferment from the board on that ground. After that he showed the board that he was working at a job for 40 hours a week in the products factory. The showing that he made clearly established that his farming and factory jobs constituted his regular and customary vocations. Although he made claim that he was exempt as a minister of religion, there is no room to argue here that the local board and the appeal board exceeded their lawful authority in rejecting it.

The contentions argued for reversal are to the effect that the trial court should, as a matter of law, have instructed for acquittal as requested, because there was denial of due process in the drafting of appellant in two respects:

One: Because of the claim that the local board refused to listen to appellant and declared itself to be set in its determination to classify him 1-A and so denied him a hearing when he appeared before it on May 23, 1950, and,

Two: Because Mr. Norton "by argument, persuasion, threats, orders, inveiglement or in some manner" induced defendant to sign a statement withdrawing his claim of a conscientious objector so that he was wrongfully denied a hearing by the hearing

---

1. The concession is expressed in the brief: "The trial court properly passed on the law questions involved in the case. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59."

officer in the Department of Justice on that claim.

The government did not call any witnesses to contradict the testimony of the defendant and his brother about the alleged refusal of the local board to listen and about its alleged misconduct towards defendant on May 23, 1950, nor to contradict the testimony given by the defendant alone about Mr. Norton's alleged misconduct. The argument for appellant, therefore, is that the court should have held that the alleged misconduct of the board and of Mr. Norton claimed to constitute denial of due process were established as a matter of law, and as a matter of law necessitated acquittal.

It is also argued very shortly, as has been stated, that the defendant was at least entitled to go to the jury on the issue of the misconduct of the local board and of Mr. Norton.

But we are not persuaded that the court was required to nullify the drafting of this admittedly able bodied male American citizen of draft age by his duly constituted local and appeal board on either of the grounds relied on.

■ One. The local draft board admittedly fixed the time, May 23, 1950, for the personal appearance of the registrant as contemplated by the statute, and it then duly admitted him and his brother to their session then being held for the purpose of hearing him. If the registrant could show that the local board thereupon fell short of its duty to listen to him or otherwise, the place to make such showing was before the appeal board. That board was fully empowered to review the action of the local board, Title 50 U.S.C.A.Appendix, § 460, and "The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President" Idem. The record here plainly shows that when the registrant took this appeal to the appeal board he presented to that board no charge of misconduct on the part of the local board in respect to the proceedings on May 23, 1950. On the contrary, he represented to the appeal board that when he had appeared before his local board on May 23, 1950, he had stated to the local board his reasons for coming before them. The necessary implication of his statement was that the board heard him. The decision of the appeal board continuing the 1-A classification made by the local board was conclusive against the collateral attack attempted in the criminal case against the local board's proceedings, and defendant's oral testimony that the local board did not listen or that it misbehaved towards him at the time of his appearance before it, was not competent to avoid the classification. As stated by the Supreme Court in the Cox case, 332 U.S. loc. cit. page 454, 68 S.Ct. loc. cit. page 121, "It seems to us that it is quite in accord with justice to limit the evidence as to status in the criminal trial on review of administrative action to that upon which the board acted". The contention that appellant was entitled to acquittal because of defendant's oral testimony that the local board wrongfully denied the registrant a hearing to which he was entitled on May 23, 1950, is without merit.

Two. At the conclusion of all the evidence the defendant requested the court as alternative to the peremptory instruction requested, to instruct that if the jury found "that defendant was contacted by an agent of the Federal Bureau of Investigation who by argument, persuasion, threats, orders, inveiglement or in any manner whatsoever induced defendant to sign a statement withdrawing his claim of and his appeal as a conscientious objector, and that by reason of said acts defendant was not summoned before a hearing officer, then in that event you are instructed that defendant was denied due process of law as provided in the Act and must be acquitted of the charges of the indictment." The court refused and defendant excepted.

Defendant's testimony on which the request for the instruction was predicated was to the effect that at the private interview between himself and Mr. Norton, Mr. Norton stated to him that the two classifications, that of minister and that of conscientious objector, conflicted and that the appeal board could not give defendant the correct consideration on both of them, so if he wanted a minister's classification the

thing for him to do was to withdraw the conscientious objector's claim. That Mr. Norton "stated to defendant that only one claim would be considered by the board." At the close of that interview defendant signed the declaration that he was not a conscientious objector, that he withdrew his claim as such, and that he relied solely on his minister's claim and did not wish to be classified as a conscientious objector. After he had signed it he delivered it to Mr. Norton. It was dated September 26, 1950, and the notice of the appeal board that it continued his classification 1-A was dated October 24, 1950.

The defendant did not testify that he believed Mr. Norton's alleged statements that the appeal board could not give the correct consideration on both a minister's and a conscientious objector's claim or that the appeal board would consider only one claim, or that he relied upon such statements. He took no steps to give any further information concerning his being a conscientious objector to anyone having to do with his draft proceedings after denying that he was such a conscientious objector, and he quiescently permitted the appeal board to take the only action in respect to his conscientious objector claim that it could take in view of the declaration he himself signed and delivered to the government agent authorized to inquire of him in respect to the matter.

■ But regardless of any contention that he was deceived by Mr. Norton about what course would be most to his advantage in order to be relieved of military service, appellant cannot ascribe his declaration, "I am not a conscientious objector", to any alleged misconduct of Mr. Norton. That declaration of fact applied to a matter peculiarly within appellant's own knowledge. He was of age and accountable. If no claim for exemption had ever been made to his board in respect to him, his classification 1-A would have been unassailable in court. The burden was on him to maintain and prove any claim for exemption from service to the administrative authority. By making and delivering the declaration asserting that he was not within the conscientious objector exemption sta-

tus, he precluded any further administrative consideration of that claim so that defendant stood in the criminal case in the position of asserting to the court that he had misled the board into acting upon his own false statement in a matter peculiarly within his knowledge, but was appealing to the court to set aside the action he caused the board to take.

■ We think the court was not in error in refusing its aid to such a purpose. Almost an entire month intervened between the date when the defendant informed the appeal board through his written declaration that he was not, and was not maintaining any claim to be, a conscientious objector. If he wanted to change his mind to claim that his declaration was false, it was incumbent upon him to get that information to the administrative authority within the ample time he had left between his delivery of his declaration and the appeal board's final action in his case. The same principle that required him to make timely assertion of any claim that his local board had been guilty of denying him a hearing and of other misconduct towards him required him to make timely assertion of his claim that the declaration of fact he had made in the Department of Justice proceedings was false.

■ We think it is clearly settled in the case of Cox v. United States, supra, that in criminal cases such as this, the court review of the classification that has been made of the defendant for military service must be limited to the evidence which was before the draft boards and upon which they acted. As the Supreme Court there pointed out, 332 U.S. at page 454, 68 S.Ct. 115, it was open to registrants to furnish the boards with full information, and the court held, as we quoted above, that it is quite in accord with justice to limit the evidence as to status in the criminal trial on review of administrative action to that upon which the board acted. Upon that holding registrants cannot disregard their draft proceedings until administrative decision has become final and then be permitted to set up in court reasons for refusal to serve which they have failed to submit to the boards.

The very numerous cases cited for appellant have been considered but none appears to us to support the contentions for reversal. As to United States v. Packer, 2 Cir., 200 F.2d 540, and United States v. Nugent, 2 Cir., 200 F.2d 46, in which certiorari has been granted, we consider them inapplicable.

As we find no error in the proceedings and judgment appealed from the judgment is affirmed.

Affirmed.